Minute Order Form (06/97)

JS6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 7610 | DATE | 7/29/2004 |
| CASE TITLE | Wargo vs. Jo Anne Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants plaintiff's motion for summary judgment (6-1) and denies defendant's motion for summary judgment (12-1). The Clerk is directed to enter judgment reversing the decision of the Commissioner of Social Security and remanding the case to the Social Security Administration for further proceedings.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 3 0 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 18 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| OR | courtroom deputy's initials | 2004 JUL 29 PM 4:04 | date mailed notice | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEVE A. WARGO,                )
                               )
            Plaintiff,         )
                               )
vs.                            )    Case No. 03 C 7610
                               )
JO ANNE B. BARNHART,           )
Commissioner of Social Security, )
                               )
            Defendant.         )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Steve Wargo applied for disability insurance benefits under the Social Security Act on November 8, 2001, alleging that he had become disabled on April 15, 1994. Wargo worked from 1975 until 1994 as a maintenance man, a job that involved lifting 50 pounds regularly and 100 pounds occasionally, significant bending, and standing for most of the work day. He contended that he had become unable to work due to a variety of medical problems.

Beginning in 1996, Wargo was diagnosed with a number of medical conditions, including hypertension, gout, heel spurs, plantar fasciitis, obesity, and chronic respiratory problems. The hypertension and gout were treated, generally successfully, with medication. For the heel spurs, Wargo was prescribed orthotic devices which permitted him to walk. In 1996, Wargo also was diagnosed with degenerative joint disease, mid-tarsus, and possibly plantar fasciitis.

In 1997, Wargo was diagnosed with tinnitus, possibly resulting from prior ear infections, which resulted in headaches and difficulty sleeping. That same year, he injured his right shoulder and lower back, which was treated but continued to cause him pain though not decreased

mobility. In October 1999, Wargo reported pain in his back and right shoulder for which he was prescribed medication. In November of that year, he was hospitalized for chest pain and dyspnea, but the condition was resolved following the hospital stay. That same month, Wargo was evaluated for physical therapy, and he exhibited defects in his posture, a moderate loss of extension and retraction, and other abnormalities. These conditions improved after therapy, and Wargo met his physical therapy goals, but he remained unable to lie supine or prone even after the therapy.

As of February 2000, Wargo reported chronic lower back and chest pain and continued gout which was treated by increasing the dosage of his medication. Later that year, he was diagnosed with "polyarthritis" (arthritis in multiple joints) for which he was prescribed pain medication. He was referred to a rheumatologist, Dr. Hirsen, who evaluated him in December 2000 for inflammatory disease and severe pain and decreased motion in the right hip. Dr. Hirsen reported to Wargo's regular treating physician in December 2000 that within the preceding year, Wargo had had chronic pain in his ankles and knees, as well as in his upper extremities, including "quite severe" pain over the previous six months which made it hard for him to walk. Testing showed degenerative disease in the right hip, lower back, and right knee, as well as mild arthritis in the wrists.

Further testing in January 2001 reflected that Wargo had moderately severe arthritis in his right hip which Dr. Hirsen described as "far advanced," as well as degenerative changes in Wargo's hands consistent with calcium pyrophosphate disease, otherwise known as pseudo gout, a separate condition sometimes observed in persons with gout. Dr. Hirsen believed that this condition might explain what he characterized as Wargo's "chronic and widespread" symptoms,

and he prescribed medication. This improved things somewhat, but Wargo remained symptomatic and it was reported that he had limited mobility in his right hip.

Wargo applied for disability benefits in November 2001. In a report dated January 3, 2002, Dr. Hirsen reported that Wargo had severe degenerative arthritis of the right hip, as well as pseudo gout, and a two year history of pain in multiple joints. The worst of this, Dr. Hirsen reported, was in Wargo's ankles and knees, but he also had pain in his hands, wrists, elbows and shoulders, as well as decreased rotation of the right hip. This left Wargo "severely hampered in his ambulation," according to Dr. Hirsen, who indicated that the severe degenerative changes in the right hip would be disabling. Dr. Hirsen reported that the pseudo gout was a form of arthritis that sometimes accompanied osteoarthritis and that would cause the latter condition to progress more rapidly.

The primary issue presented by Wargo's request for disability benefits was whether he was disabled within the meaning of the law as of the date he was last eligible for benefits – his "date last insured," or DLI – specifically, December 31, 1999. *See Hughes v. Chater*, 895 F. Supp. 985, 992 (N.D. Ill. 1995) (citing *Meredith v. Bowen*, 833 F.2d 650, 652 n.1 (7th Cir. 1987)). "Disability" under the applicable regulations means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which... has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §416.905.

A physician reviewed Wargo's medical records for the Social Security Administration and submitted a "physical residual functional capacity assessment" consisting of a series of check-offs as to how, if at all, the physician believed Wargo was limited in various respects and

3

then this one-sentence conclusion: "As of this individual's date last insured of 12/99, he should have been capable of performing medium work activity."

Administrative Law Judge Richard Boyle held a hearing on March 5, 2003 at which Wargo, a friend of his, and a vocational expert testified. Wargo reported being in constant pain in all of his joints. He testified that he had ceased many of his former activities several years prior, due to pain. He stated that he had constant, strong pain in his right hip, which medication relieved somewhat but not entirely, as well as periodic soreness in his right knee. Wargo testified that in 1999, he could walk for no more than a block or two without pain. It hurt to use stairs, so he avoided using stairs. As of 1999, he said, he could stand in one place for no more than 10 or 15 minutes and could not bend or stoop. He could sit for at most 30 minutes without getting up and could lift only 15 to 20 pounds. He experienced fatigue both at the time of the hearing and in 1999 and had problems sleeping, such that he slept in a reclining chair in the upright position. He also reported having trouble hearing due to the tinnitus.

The vocational expert testified that Wargo's past work was classified as heavy, unskilled labor. He stated that a person with Wargo's age, education, and work history, who had the capacity for medium work and had restricted climbing ability could not do Wargo's past work but could do various other jobs. This was also the case if a person with these same characteristics were limited to light work, though the number of available jobs would be reduced if the person had difficulty hearing. If, however, the person could not bend or stoop, could stand or walk for only 15 minutes, and could sit for only 30 minutes – as Wargo had described his own condition as of 1999 – there would be no jobs available that he could perform. The expert conceded that a person who had to change positions that frequently would not be able to perform

even sedentary work.

On June 24, 2003, the ALJ issued a decision denying Wargo's claim. He concluded that Wargo could perform medium work as of his DLI and thus was not disabled. The ALJ's decision became the final agency decision when the Appeals Council denied Wargo's request for review. *See* 20 C.F.R. §404.981. Wargo then filed this lawsuit seeking reversal or alternatively a remand of the agency's decision. Both Wargo and the Commissioner have moved for summary judgment.

Having reviewed the record and the parties' briefs, the Court has concluded that the ALJ's ruling must be reversed, and the case must be remanded for further consideration, for three reasons. First, in his determining of Wargo's functional capacity, the ALJ failed to factor in (or at least failed to identify) *all* of Wargo's impairments; he omitted several very significant ones, including osteoarthritis and degenerative disease of the right hip and pseudo gout. All of the claimant's impairments must be considered in determining disability. *See* 20 C.F.R. § 404.1253. Though it is of course conceivable that the ALJ considered these conditions, his failure to say that he had done so makes it impossible for the Court to find that he considered the evidence that might be contrary to the Commissioner's position. *See generally Godbey v. Apfel,* 238 F.3d 803, 808 (7th Cir. 2000); *Green v. Shalala,* 51 F.3d 96, 101 (7th Cir. 1995) (ALJ must articulate his analysis of the evidence so that a court may track his reasoning and be assured he considered the important evidence).

Second, though an ALJ's credibility determinations are entitled to deference, *see, e.g., Indoranto v. Barnhart,* No. 03-3309, slip op. at 5 (7th Cir. June 29, 2004) (reprinted at 2004 WL 1470048, page references not available at this time), the determination must be based on

evidence in the record, and the ALJ must explain the determination, particularly when it involves rejection of the claimant's credibility regarding limitations on his activities. *Id.* at 6; *see Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). In this case there was at least some medical testimony that could reasonably be expected to produce the limitations Wargo said he had before his DLI, namely that of Dr. Hirsen. Without a more informative explanation, the ALJ's rejection of Wargo's description cannot be upheld. In *Indoranto,* the Seventh Circuit stated that "the ALJ cannot reject a claimant's testimony about limitations on [his] daily activities solely by stating that such testimony is unsupported by the medical evidence," *Indoranto,* slip op. at 6, which is precisely what the ALJ did in Wargo's case.

Third, the Court is not convinced that the ALJ considered all of the functional demands of medium work, the type of work he believed Wargo could still perform as of his DLI. As Wargo points out, medium work requires an ability to stand or walk for six hours out of an eight-hour work day and to do frequent bending and stooping. *See* Soc. Sec. Ruling 83-10. The ALJ (and for that matter the physician who performed the residual functional capacity assessment after reviewing Wargo's records) failed to explain how someone like Wargo with a severe hip disorder could perform such activities.

For these reasons, the Commissioner's decision is reversed and remanded for further proceedings. On remand, the Court urges the ALJ to make a more specific and particularized determination of when, if at all, Wargo became disabled – even if this is after his DLI. There is significant evidence that Wargo was disabled at or at least just before his DLI, and for this reason a specific determination by the ALJ will facilitate review of his decision.

## Conclusion

For the reasons stated above, the Court grants plaintiff's motion for summary judgment [docket # 6-1] and denies defendant's motion for summary judgment [docket # 12-1]. The Clerk is directed to enter judgment reversing the decision of the Commissioner of Social Security and remanding the case to the Social Security Administration for further proceedings.

Date: July 29, 2004

_____
MATTHEW F. KENNELLY
United States District Judge